FILED

April 21 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0398

DA 14-0398

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 109

KURT LEE KUMMERFELDT,

      Plaintiff and Appellant,

    v.

STATE OF MONTANA,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DV 13-30
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jason T. Holden; Dana A. Henkel, Faure Holden Attorneys at Law, P.C.;
Great Falls, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Mardell L. Ployhar,
Assistant Attorney General; Helena, Montana

          Nickolas C. Murnion, Valley County Attorney; David Gorton, Deputy
Valley County Attorney; Glasgow, Montana

Submitted on Briefs:  March 11, 2015
Decided:  April 21, 2015

Filed:

                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Kurt Lee Kummerfeldt (Kummerfeldt) appeals from the order of the Seventeen Judicial District Court, Valley County, denying his petition for reinstatement of his driver's license. We affirm.

¶2 We address the following issue:

¶3 *Did the District Court err by denying Kummerfeldt's petition for reinstatement of his driver's license?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On June 6, 2013, Valley County Sheriff's Deputy Matthew Remmich was patrolling near the marina in Fort Peck. After hearing the loud squealing of car tires, Deputy Remmich observed a yellow Chevrolet Corvette drive out of the parking lot. Deputy Remmich noted the vehicle was "moving quite quickly" and "did not stop" at the stop sign. Deputy Remmich followed the vehicle for approximately one mile before observing the vehicle cross over the center line into the oncoming lane and then swerve onto the edge of the road. At that point, Deputy Remmich activated his emergency lights and initiated a traffic stop. Kummerfeldt was driving and the sole occupant in the car.

¶5 During the investigatory stop, Deputy Remmich noticed that Kummerfeldt's eyes were glassy and bloodshot. Deputy Remmich requested that Kummerfeldt take a preliminary breath test (PBT) at the scene. Deputy Remmich read Kummerfeldt the preliminary alcohol screening test advisory, which stated that the officer had a right to request that Kummerfeldt take a PBT and Kummerfeldt's license would be suspended if

2

he refused. Kummerfeldt did not immediately answer, but instead discussed for almost 20 minutes whether he should take the test. During this discussion, Deputy Remmich requested that Kummerfeldt take the PBT approximately 27 times. Kummerfeldt asked Deputy Remmich whether he could avoid losing his license if he provided a breath sample, to which Deputy Remmich replied: "If you provide a sample of breath, you will not lose your license. If you refuse to provide a sample of breath to the PBT, for the PBT, you will lose your license for at least six months." Kummerfeldt submitted to the PBT, which reported a blood alcohol concentration of 0.232 percent.

¶6 Deputy Remmich arrested Kummerfeldt for driving under the influence of alcohol (DUI) and transferred him to the Valley County Detention Center. At the center, Deputy Remmich advised Kummerfeldt he was going to request that Kummerfeldt take a breath test, and that he may later request that Kummerfeldt take a blood test. Deputy Remmich attempted to administer the breath test; however, because the center did not have two mouthpieces necessary to provide the requisite second breath sample for the Intoxilyzer 8000, Deputy Remmich could not properly complete the test. As a result, Deputy Remmich requested that Kummerfeldt take a blood test. Kummerfeldt refused. Kummerfeldt stated he did not want to get poked by needles, but told Deputy Remmich that he would take the blood test if Deputy Remmich would also take it. Deputy Remmich seized Kummerfeldt's license for refusing to take the blood test.

¶7 On July 8, 2013, Kummerfeldt filed a petition to have his driver's license reinstated. The District Court conducted a hearing on October 21, 2013. The court heard

3

testimony from both Deputy Remmich and Kummerfeldt, and watched the video recording taken by Deputy Remmich's in-car camera. On June 5, 2014, the District Court issued findings of fact, conclusions of law, and its order denying Kummerfeldt's petition. The court found Deputy Remmich had reasonable grounds to stop Kummerfeldt's vehicle, that Kummerfeldt's refusal to submit to the blood test was not based on fear of needles that amounted to a disability, and concluded Kummerfeldt was properly arrested for DUI. Kummerfeldt appeals.

## STANDARD OF REVIEW

¶8 We review a district court's ruling on a petition for reinstatement of a driver's license to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Ditton v. DOJ Motor Vehicle Div.*, 2014 MT 54, ¶ 14, 374 Mont. 122, 319 P.3d 1268. A district court's findings of fact are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Owen v. Skramovsky*, 2013 MT 348, ¶ 17, 372 Mont. 531, 313 P.3d 205.

## DISCUSSION

¶9 *Did the District Court err by denying Kummerfeldt's petition for reinstatement of his driver's license?*

¶10 Kummerfeldt argues the District Court erred by denying his petition to reinstate his driver's license. Pursuant to § 61-8-403(1), MCA, a person whose driver's license

has been seized "may file a petition to challenge the license suspension or revocation in the district court in the county where the arrest was made." In reviewing the suspension of a driver's license, the court is limited to the issues set forth in § 61-8-403(4)(a), MCA. *Ditton*, ¶ 30. The suspension of a driver's license is presumed to be correct, and the "petitioner bears the burden of proving that the state's action was improper." *Muri v. State*, 2004 MT 192, ¶ 5, 322 Mont. 219, 95 P.3d 149.

¶11 Kummerfeldt alleges three points of error in the District Court's decision under § 61-8-403(4)(a), MCA. First, Kummerfeldt contends the court erred by finding Deputy Remmich had reasonable grounds to stop his vehicle. The "reasonable grounds" requirement found in § 61-8-403(4)(a)(i), MCA, is the equivalent of the "particularized suspicion" standard necessary to make an investigative stop. *Ditton*, ¶ 30. "A statutory violation alone is sufficient to establish particularized suspicion for an officer to make a traffic stop." *State v. Schulke*, 2005 MT 77, ¶ 16, 326 Mont. 390, 109 P.3d 744. Kummerfeldt reasons that Deputy Remmich's in-car video does not show that he failed to stop at the stop sign in violation of § 61-8-344, MCA. However, Deputy Remmich testified that, though it was difficult to tell from the in-car video, Kummerfeldt had failed to stop. The District Court found Deputy Remmich's testimony credible and entered findings in favor of his account of the event. We review a district court's findings of fact to determine if they are clearly erroneous. *Ditton*, ¶ 14. Given the ambiguity in the video and Deputy Remmich's testimony, which the District Court found to be credible, we are unable to conclude the District Court clearly erred in finding Kummerfeldt violated

5

§ 61-8-344, MCA. Therefore, Deputy Remmich had reasonable grounds to effectuate the traffic stop.

¶12 Kummerfeldt next contends the State should be estopped from suspending his driver's license because of the statement made by Deputy Remmich: "If you provide a sample of breath, you will not lose your license. If you refuse to provide a sample of breath to the PBT, for the PBT, you will lose your license for at least six months." Kummerfeldt draws from Deputy Remmich's statement an affirmative representation that if he provided a PBT sample, he would not lose his license even if he refused subsequent tests. Kummerfeldt cites this Court's decision in *In re Orman*, 224 Mont. 332, 731 P.2d 893 (1986) to support his contention that, because Deputy Remmich affirmatively represented to Kummerfeldt that he would not lose his license so long as he provided a sample for the PBT, the suspension of his driver's license was improper.

¶13 We disagree with Kummerfeldt's characterization of Deputy Remmich's statement and thereby conclude that *Orman* is inapposite. In *Orman*, the arresting officer unintentionally but affirmatively misrepresented to the defendant that his refusal to submit to a breath test carried a shorter license suspension than the statute actually imposed. *Orman*, 224 Mont. at 335, 731 P.2d at 895. Consequently, we prohibited the State from suspending Orman's license for longer than he had been advised of when he refused the test. *Orman*, 224 Mont. at 336, 731 P.2d at 895.

¶14 Here, Deputy Remmich did not misrepresent the consequences of refusing to take a test. In making his statement, Deputy Remmich was clearly speaking about the PBT to

6

the effect that, if Kummerfeldt provided a PBT sample, he would not lose his license on account of the PBT. Deputy Remmich did not affirmatively represent to Kummerfeldt that if he provided a PBT sample he would be immune from losing his license regardless of his refusal to take subsequent tests. Furthermore, any possible contextual confusion that may have arisen was eliminated when Deputy Remmich read Kummerfeldt the written advisory, which accurately advised him of the consequences of refusing the PBT. Accordingly, the District Court did not err by concluding the State was not estopped from suspending Kummerfeldt's driver's license because of Deputy Remmich's statement.[1]

¶15 Lastly, relying on *Wessell v. State*, 277 Mont. 234, 921 P.2d 264 (1996), Kummerfeldt contends his refusal to take a blood test should not constitute a "refusal" under § 61-8-402, MCA, because of his alleged aversion to needles. In *Wessell*, we concluded, under the facts of that case, that the defendant's disabling fear of needles constituted a psychological inability to perform the test, which equated to a physical disability, precluding his participation regardless of his willingness. *Wessell*, 277 Mont. at 240, 921 P.2d at 267-68. On that basis, we held the district court erred by concluding that Wessell had refused the test under § 61-8-402, MCA. Importantly, however, in

---

[1] Kummerfeldt also contends the District Court erred by finding that "Kummerfeldt was unable to provide an appropriate sample for each of the two breath tests requested at the detention center." We agree that this finding of fact is clearly erroneous, as Kummerfeldt was able to provide a sample. However, we "will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *State v. Betterman*, 2015 MT 39, ¶ 11, 378 Mont. 182, 342 P.3d 971. Here, there was sufficient evidence to affirm the District Court despite this erroneous finding of fact. Thus, the court's error does not provide grounds for reversal.

*Wessell*, the prosecution stipulated to the defendant's disabling fear of needles. *Wessell*, 277 Mont. at 240, 921 P.2d at 267.

¶16     In this case, there was no stipulation to Kummerfeldt's disabling fear of needles or resulting inability to perform the test. Indeed, the State contested Kummerfeldt's alleged fear of needles. Kummerfeldt testified he was "scared" of needles, but told Deputy Remmich on the night of the incident that he would take the blood test if Deputy Remmich also took the test. Kummerfeldt further admitted that he recently had an IV and "can handle [needles] if it's necessary." We conclude, on this record, which differs from *Wessell*, that Kummerfeldt did not establish that he suffered from a psychological fear of needles rendering him physically unable to perform the test. Therefore, we hold Kummerfeldt's refusal to submit to the blood test constituted a refusal within the meaning of § 61-8-402, MCA.

¶17     The District Court did not err by denying Kummerfeldt's petition for reinstatement of his driver's license.

¶18     Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA